# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WELDE MABRAT | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| ALLSTATE INSURANCE CO., | : | NO. 12-1293 |
| Defendants | : | |

## MEMORANDUM RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

Baylson, J.                                                                                                        December 12, 2012

## I. INTRODUCTION

Plaintiff, Welde Mabrat, alleges Defendant, Allstate Insurance Co. ("Allstate"), breached its contract and acted in bad faith by denying Mabrat's claim for fire-damage coverage under her homeowners insurance policy. The parties, which have filed cross motions for summary judgment, dispute the enforceability of a provision in the insurance policy that conditions coverage of a dwelling on the insured's physical residence in the building. Although there are times when a court should look beyond the plain meaning of an insurance contract, or require a showing of actual prejudice before enforcing it, there is no precedent in Pennsylvania law for doing so under the circumstances here. As discussed below, the Court will GRANT Allstate's Motion for Summary Judgment on both claims.

## II. FACTS & PROCEDURAL HISTORY

The material facts in this case are not in dispute. Mabrat is an Ethiopian immigrant unable to proficiently read, write, or speak in English without the assistance of an interpreter. Joint Stmt. of Stipulated Facts ¶ 19. In the spring of 2007, Mabrat purchased a residential, two-family apartment building at 2020 S. 65th Street in Philadelphia. Id. ¶¶ 1-2. Initially, Mabrat

lived in the building's basement unit and rented out the upstairs unit. Id. ¶ 6. Prior to purchasing the building, Mabrat contacted a real estate broker about obtaining insurance. Id. ¶ 5. Mabrat told the broker that she intended to live in the basement unit but wanted the entire property insured. Mabrat Aff. ¶6. The broker, who only spoke English, recommended that Mabrat apply for an Allstate policy and filled out an application form for Mabrat to sign. Mabrat Dep. at 15, 22-25. The application form, which listed the building as having two "Apt./Family units," stated that Mabrat was the "owner" who used the property as her "primary" residence. Pl's Cross Mot. Ex. B. at 2.

As set forth on the application form that Mabrat signed, "any insurance bound hereunder shall otherwise be subject in all respects to the terms and conditions of the regular policy forms of the Company at present in use." Pl's Cross Mot. Ex. B. at 6. These terms and conditions are spelled out in Allstate's 35-page Standard Homeowner's Policy ("Policy"). Although the record is unclear whether Mabrat received the Policy prior to submitting her application, she received the Policy each subsequent year as part of Allstate's annual renewal offers. Def's Mot. Ex. E. Mabrat admits that she never read the Policy, nor asked anyone to interpret it for her. Mabrat Aff. ¶ 8; Mabrat Dep. at 19.

Under the terms of the Policy, Mabrat's insurance was for a "dwelling." A dwelling is defined on page four of the Policy as a "a one, two, three or four family building, identified as the insured property on the Policy Declarations, where you reside and which is principally used as a private residence." Def's Mot. Ex. E. at 19. The Policy provides that Allstate's agreement to insure Mabrat was made "[i]n reliance on the information you have given us" and that, "[i]n return, you must pay the premium when due and comply with the policy terms and conditions,

and inform us of any change in title, use, or occupancy of the residence premises." Def's Mot. Ex. E. at 20.

According to Mabrat, she was never informed by either the broker or Allstate that her coverage was conditioned on residing in the building and that the Policy required her to notify Allstate if she changed her personal residence. Mabrat Aff. ¶ 8. Because she was unable to read her Policy, Mabrat was not aware of these conditions and thus did not notify Allstate when she permanently changed her personal residence on, or about, March 17, 2009. Id. ¶¶ 11-12; Joint Stmt. of Stipulated Facts ¶ 8. Allstate continued to send its annual renewal offers to the 2020 S. 65th St location[1] and Mabrat, believing the property was still covered by her Policy, continued to pay her premiums. Id. ¶ 10.

On June 16, 2011, Mabrat's 2020 S. 65th St property was damaged by a fire that erupted in the second floor apartment. Id. ¶ 9. Mabrat filed a timely claim to recover under her Policy and cooperated with Allstate's investigation. Id. ¶¶ 11, 13. After determining that Mabrat did not reside in the building at the time of the fire, Allstate denied Mabrat's claim. Def's Mot. Ex. G.

On February 6, 2012, Mabrat filed a Complaint against Allstate in the Court of Common Pleas of Philadelphia County. Mabrat's Complaint alleges that Allstate both breached its contract and acted in bad faith. Def's Mot. Ex. A. Allstate, an Illinois corporation with a principal place of business in Northbrook, Illinois, elected to remove the case to this Court. (ECF No. 1). Upon doing so, it filed an Answer with Affirmative Defenses. (ECF No. 4). On May 17, 2012, the parties filed a Statement of Joint Stipulated Facts, (ECF No. 9), and, shortly thereafter, filed cross motions for summary judgment. (ECF Nos. 11-12). At oral argument on

---

[1] Because there is no evidence to suggest that Allstate had any knowledge of Mabrat's change in residence, this case does not present the question of whether Allstate waived its right to enforce the residency requirement.

3

November 14, 2012, the Court expressed its inclination to grant Allstate's motion. (ECF No. 21). The Court, however, invited Plaintiff's counsel to submit additional legal authority to support its position. No additional authority was provided.

### III. LEGAL BACKGROUND

#### A. Jurisdiction and Venue

This Court has jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §§ 1332(a) and (c). Mabrat, a citizen of Pennsylvania, seeks damages in excess of $195,596.00 from Allstate, a citizen of Illinois. Venue is proper under 28 U.S.C. § 1391(b).

#### B. Summary Judgment

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. Under Rule 56, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in favor of the non-movant. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).

### IV. ANALYSIS

Mabrat's breach of contract claim is based on two legal doctrines that have been developed to protect the interests of non-commercial insureds in Pennsylvania: the "reasonable expectations" and Brakeman doctrines. As discussed below, the reasonable expectations doctrine establishes when courts should look beyond the plain meaning of an insurance contract,

while the Brakeman doctrine establishes when courts should require actual prejudice before enforcing a contractual provision.

In their cross motions for summary judgment, the parties dispute the applicability of these doctrines to the circumstances at issue here. Mabrat argues that Allstate is denying coverage based on a "technicality," as it suffered no actual prejudice from her non-compliance and she had a reasonable expectation that "any physical loss to the duplex would be covered regardless of where she resided." Pl's Mem. in Support of Mot. Summ. J. ("Pl. Mem. I"), at 1. Under Pennsylvania law, therefore, Mabrat argues that her reasonable expectations must trump the plain meaning of the Policy's residency requirement.

Allstate counters by challenging Mabrat's interpretation of Pennsylvania law. Specifically, Allstate argues that Pennsylvania courts only look past the plain meaning of an insurance contract, and only require a showing of actual prejudice, under very narrow circumstances, none of which are present here. Accordingly, Allstate contends that Pennsylvania law requires that the Policy's plain and unambiguous terms be dispositive of this dispute.

For the reasons that follow, the Court agrees with Allstate's position.

**A.     The Reasonable Expectations Doctrine**

Under Pennsylvania law, "the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured." Liberty Mut. Ins. Co. v. Treesdale, Inc., 418 F.3d 330, 344 (3d Cir. 2005) (quoting Reliance Ins. Co. v. Moessner, 121 F.3d 895, 903 (3d Cir. 1997)). As a general rule, however, "the parties' reasonable expectations remain 'best evidenced by the language of the insurance policy.'" Safe Auto Ins. Co. V. Berlin, 991 A.2d 327, 332 (Pa. Super. 2010). So long as the contract language is "plain and unambiguous," the contract's plain meaning will generally be controlling. West v. Lincoln Benefit Life Co., 509 F.3d 160, 168-69

5

(3d Cir. 2007). Only in "very limited circumstances" do Pennsylvania courts disregard the plain meaning of an insurance contract. Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 109 n.8 (Pa. 1999). Specifically, where (A) the policy terms "are not readily apparent," and/or (B) the insurer deceived the insured by adding terms at odds with the requested policy. Id. at 109 n.8 (citing Tonkovic v. State Farm Mut. Auto. Ins. Co., 521 A.2d 920 (1987) and Collister v. Nationwide Life Ins. Co., 388 A.2d 1346 (1978)).

1. **Insurer Deception**

Mabrat argues that we must look beyond the plain meaning of the Policy because of insurer deception. Pl's Mem. in Opps'n to Def's Mot. ("Pl. Mem. II."), at 8. As Allstate correctly points out, however, Mabrat never actually alleges (nor provides evidence to prove) that Allstate "intentionally misled or misrepresented the terms of the policy." Def's Mem. in Support of Mot. ("Def's Mem."), at 14. Mabrat points instead to the following facts: (1) Allstate had knowledge that her property had two apartments when it issued the policy; (2) Mabrat was never informed of the residency requirement by either the broker or Allstate; and (3) Mabrat's limited English skills[2] made her heavily reliant on the representations of her broker. Such facts fall far short of insurer deception. In Tonkovic, the Pennsylvania Supreme Court found insurer deception because the insurance agent added policy terms that ran directly counter to what he reasonably knew the insured was requesting. 521 A.2d at 921-22. By contrast, Mabrat told the broker that she planned on living in the house and stated on her application form that it was her "primary residence." It cannot be said, therefore, that Allstate's inclusion of a residency

---

[2] It is immaterial that Mabrat's poor English skills prevented her from reading the Policy. See Venetian Blind, 469 A.2d at 567 ("[T]he insured may not avoid the consequences of [a] limitation by proof that he failed to read the limitation or that he did not understand it."). Nor is it material that Mabrat is an "unsophisticated insured." Although this can be a relevant consideration in determining whether "the insured acted reasonably in expecting a given claim to be covered," Reliance, 121 F.3d at 906, Mabrat cites no authority showing that it is probative of whether the *insurer* engaged in *deception*.

requirement ran counter to what it should have known Mabrat was requesting. See id. at 925 ("We find a crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested, and cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for."). Accordingly, the Court cannot look past the plain meaning of the Policy on the basis of insurer deception.

**2.      Hidden Terms**

With no evidence of insurer deception, the reasonableness of Mabrat's expectations can only be considered if the residency requirement was "not readily apparent" as defined by Pennsylvania courts.

In Pennsylvania, insurance provisions must not only be "clearly worded," but "conspicuously displayed." Standard Venetian Blind v. Am. Empire Ins. Co., 469 A.2d 563, 567 (Pa. 1983). Where the contested contractual term was "not readily apparent," courts may look beyond the contract's plain meaning to the insured's reasonable expectations. Madison, 735 A.2d at 109 n.8 (citing Collister, 388 A.2d at 1346). On its face, this rule has an arguably expansive meaning; courts, however, have largely relegated it to the unique facts in Collister[3] and generally insist that there be evidence of an "affirmative misrepresentation." See West, 509 F.3d at 167-69. Accordingly, because the facts of this case are distinct from those in Collister, and because there is no evidence that Allstate made "affirmative misrepresentations," the "not

---

[3] In Collister, the Pennsylvania Supreme Court addressed the use of conditional receipts in insurance contracts. With a conditional receipt, the insurer does not provide immediate coverage to the insured upon receipt of the latter's application and first premium payment. As the court noted, conditional receipts "tend to encourage deception," because many prospective insureds will have the reasonable expectation that coverage begins immediately upon payment of the first premium. Collister, 388 A.2d at 1352. In order to protect an insured's reasonable expectations, the Collister court held that insurers who use conditional receipts must "establish by clear and convincing evidence that the consumer had no reasonable basis for believing that he or she was purchasing immediate insurance coverage." Id. at 1353.

7

readily apparent" prong of the reasonable expectations doctrine does not justify this Court looking past the Policy's plain meaning.

The Court's conclusion that neither prong of the reasonable expectations doctrine justifies looking past the Policy's plain meaning is consistent with Bell v. Allstate Ins. Co., No. 03-4482, 2005 WL 1353527 (E.D. Pa. May 31, 2005), a case that addressed the same policy provisions, and almost identical factual circumstances, as those at issue here. As with the instant dispute, (1) the Bell plaintiff received Allstate's standard homeowners policy for a two-unit duplex; (2) he was living in one of the duplex units at the time he purchased the policy; (3) the Allstate agent did not tell him he was required to reside in the building to maintain coverage; and (4) after he moved out of the building, a fire erupted in one of the apartments. 2005 WL 1353527, *1-2. The Bell plaintiff argued that Allstate violated its duty of good faith and fair dealing by failing to disclose the terms of the policy prior to it going into effect. The court rejected this theory, however, because an insurance company's duty "of full and complete disclosure," did not "impose a requirement on [Allstate's insurance agent] to explain every facet of Allstate's homeowner's policy to Bell when he applied for coverage." Id. at 5 & n.11. Further, as is the case here, "Allstate did not deny benefits based on an exclusion or limitation of coverage which differed from the terms of the policy that Plaintiff requested and paid for." Id. at 6.

**(B)  The Brakeman Doctrine**

Despite Mabrat's claims to the contrary, the Brakeman doctrine is inapplicable to this case. In Brakeman v. Potomac Ins. Co., 371 A.2d 193 (Pa. 1977), an insurance company denied coverage because the insured failed to provide timely notice of the occurrence that triggered the claim. Although the policy required timely notification, the Pennsylvania Supreme Court held

8

that insurers cannot deny coverage for late notice, absent evidence that the notice actually prejudiced its interests (e.g., by impairing its ability to investigate and defend the claim). Brakeman, 371 A.2d at 198. As the court explained: "Allowing an insurance company, which has collected full premiums for coverage, to refuse compensation to an accident victim or insured on the ground of late notice, where it is not shown timely notice would have put the company in a more favorable position, is unduly severe and inequitable." Id.

According to Mabrat, Brakeman requires that Allstate prove actual prejudice from her breach of the residency requirement. Allstate cannot make this showing, Mabrat argues, because Allstate knew Mabrat did not live in the second floor apartment at the time it issued the policy. Under this reasoning, "[s]ince Allstate insured the Property as a duplex and it was used as a duplex, there was no prejudice to Allstate by Ms. Mabrat's move." Pl. Mem. I, at 7. Further, because the fire did not start in the apartment unit in which Mabrat had resided, Mabrat contends that the fire would have occurred even if she still lived in the building. "[T]he risk of loss covered by the Policy," Mabrat therefore concludes, "is precisely the loss suffered." Id.

As with her interpretation of the reasonable expectations doctrine, Mabrat's interpretation of Brakeman overlooks the strict limitations that Pennsylvania courts, and federal courts sitting in diversity, have imposed on Brakeman's reach. Courts have repeatedly refused to extend Brakeman's "sweeping language" to other types of contract provisions, Nazay v. Miller, 949 F.2d 1323, 1337 n.20 (3d Cir. 1991), including limitation-of-suit clauses, Hosp. Support Servs., Ltd. v. Kemper Grp., Inc., 889 F.2d 1311, 1313-14 (3d Cir. 1989) (citing cases), and claims-made policies, Lexington Ins. Co. v. W. Pa. Hosp., 423 F.3d 318, 327 n.5 (3d Cir. 2005) (citing cases). A consistent thread in these decisions is the principle that Brakeman should not be applied in a manner that imposes an unbargained-for extension of coverage. City of Harrisburg

v. Int'l Surplus Lines Ins. Co., 596 F.Supp. 954, 961-62 (M.D. Pa. 1984). Courts have distinguished, for example, the notice policy at issue in Brakeman (an "occurrence" notice policy) from "claims-made" notice policies, because judicial extensions of a claims-made period constitutes an "unbargained-for expansion of coverage, gratis, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy." Lexington, 423 F.3d at 325 (quoting Am. Cas. Co. of Reading, Pa. v. Continisio, 17 F.3d 62, 68-69 (3d Cir. 1994)).

Based on the narrow interpretation that courts have given to Brakeman, its "sweeping language" is of little avail to Mabrat because, unlike the notice provision in Brakeman, a residency requirement goes to the scope of Allstate's coverage. Specifically, Allstate insured Mabrat's dwelling for only so long as she resided in it. To find that Allstate was required to insure this building after Mabrat moved out would amount to a judicial extension of Allstate's coverage. Irrespective of whether Allstate was actually prejudiced by Mabrat's failure to comply, therefore, the Court must enforce the residency requirement based on its plain and unambiguous meaning.

**C. Bad Faith**

The Court finds no merit in Mabrat's claim that Allstate's denial of coverage was committed in bad faith pursuant to 42 Pa. C.S. § 8371. In Pennsylvania, bad faith is defined as "any frivolous or unfounded refusal to pay proceeds of a policy." Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 523 (3d Cir. 2012) (quoting Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994)). The "crux" of a bad faith claim is that the insurer has denied coverage "when it has no good reason to do so." Jung v. Nationwide Mut. Fire Ins. Co., 949 F. Supp. 353, 360 (E.D. Pa. 1997). To defeat a motion for summary judgment, a party alleging bad

faith "must show that a jury could find by 'the stringent level of clear and convincing evidence' that the insurer lacked a reasonable basis for its handling of the claim and that it intentionally or recklessly disregarded its unreasonableness." Bell, 2005 WL 1353527, at *3. Since there is no evidence that Allstate deceived Mabrat about the Policy's residency requirement, and since Allstate's denial of coverage was based on a correct reading of this provision, it cannot be said that Allstate had "no good reason" to deny coverage. The Bell court, which addressed virtually the same scenario, held that a bad faith claim cannot be sustained under these circumstances. See id. at *3-5. This Court agrees.

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment on both claims will be GRANTED and Plaintiff's Cross Motion will be DENIED. The case will therefore will be DISMISSED.

An appropriate order follows.

O:\CIVIL 12\12-1293 Mabrat v Allstate\final_opinion.docx